## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

NIEVES SONNY ORTEGA,

      Petitioner,

      v.                                                                     Civ. No. 20-506 JCH/SCY

DWAYNE SANTISTEVAN, Warden, et al.,

      Respondents.

### <u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>

This Proposed Findings and Recommended Disposition addresses Petitioner Nieves Sonny Ortega's habeas corpus petition filed pursuant to 28 U.S.C. § 2254. Doc. 1. The Honorable Judith C. Herrera referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. Doc. 10. After reviewing the briefs, the state court record, and the relevant law, I recommend denying Mr. Ortega's petition on the merits in its entirety.

### BACKGROUND

### 1. **Factual Background**

On May 3, 2010, the State of New Mexico charged Mr. Ortega, by criminal information, with eight counts (Doc. 9-1 at 1-3 (Ex. A); *id.* at 4-6 (Ex. B)) and on September 6, 2011, the State filed a corrected second amended criminal information, changing the charges slightly as follows: (1) first degree murder (willful and deliberate); (2) conspiracy to commit first degree murder (willful and deliberate); (3) attempt to commit a felony, to wit: kidnapping (in the first degree); (4) attempt to commit a felony, to wit: armed robbery; (5) conspiracy to commit robbery; (6) conspiracy to commit kidnapping (in the first degree); and (7) possession of a

firearm or destructive device by a felon. Doc. 9-1 at 9-11 (Ex. D). I take the following facts from

the New Mexico Supreme Court order on appeal of Mr. Ortega's convictions:

> On the night of January 29, 2010, Adam Laureles (Laureles) drove to the residence of a friend in Hobbs, New Mexico to pick up his brother, Chris Laureles (Victim). Victim was listening to music and drinking beer with a small group of people. At around midnight, a member of the group left and returned with Defendant [Ortega] and Mark Ruiz (Co-defendant).
>
> Co-defendant threatened Victim over money Victim allegedly owed him and directed Victim to leave with him. Victim refused. Co-defendant pulled out a handgun, and Defendant placed his hand in his pocket making it appear that he also had a gun. Co-defendant told Victim to take off his jewelry, but Victim refused. Co-defendant wanted the jewelry or Victim's car as collateral for the debt allegedly owed to him. Defendant walked outside the house, and was followed by Laureles, Victim, and Co-defendant.
>
> Upon going outside, Laureles noticed a car parked on the street behind Victim's car, which he believed to be Defendant's car. Victim and Co-defendant walked over to Victim's car and Victim asked Co-defendant to get in the car with him. Victim got into the driver's seat while Co-defendant remained standing outside the car, next to the driver's side. Co-defendant reached into Victim's car, grabbed a flashlight, and hit victim on the head with it. Victim started the car, put it in reverse, and hit the gas. Victim backed into Defendant's car but before he could take off, Defendant and Co-defendant opened fire. Once the shooting stopped, Victim jumped out of the passenger side door, took several steps, collapsed, and died on the scene. The Office of the Medical Investigator (OMI) determined that Victim died from gunshot wounds to the chest, abdomen, and left arm, and ruled the death a homicide.

Doc. 9-1 at 236 (Ex. II); *see also State v. Ortega*, 2014-NMSC-017, ¶¶ 2-4, 327 P.3d 1076.

### 2. Procedural Background

On stipulated motion from the parties, the court severed count seven (possession of a

firearm) from the other counts. Doc. 9-1 at 7-8 (Ex. C); *id.* at 12 (Ex. E). In September 2011, Mr.

Ortega proceeded to trial on the remaining counts. The jury returned guilty verdicts on counts 1

(first degree murder), 2 (conspiracy to commit first degree murder), 3 (attempt to commit

kidnapping), 4 (attempt to commit armed robbery), 5 (conspiracy to commit robbery), and 6

(conspiracy to commit kidnapping). *Id.* at 55 (Ex. J); 56 (Ex. K); 57 (Ex. L); 58 (Ex. M); 59 (Ex.

N); 60 (Ex. O). Thereafter, Mr. Ortega entered a no contest plea to count 7 (felon in possession of a firearm). *Id.* at 65-68 (Ex. Q). The state court sentenced him to: life incarceration, followed by 2 years' parole for count 1; 19 years' incarceration (including a 4 year habitual offender enhancement) followed by 2 years' parole for count 2; 13 years' incarceration (including a 4 year habitual offender enhancement) followed by 2 years' parole for count 3; 7 years' incarceration (including a 4 year habitual offender enhancement) followed by 2 years' parole for count 4; 5.5 years' incarceration (including a 4 year habitual offender enhancement) followed by 1 year parole for count 5; 13 years' incarceration (including a 4 year habitual offender enhancement) followed by 2 years' parole for count 6; and 2.5 years' incarceration (including a 1 year firearm enhancement) followed by 1 year's parole for count 7, all to be served concurrently. *Id.* at 69-73 (Ex. R).

On February 29, 2012, Mr. Ortega appealed his conviction to the New Mexico Court of Appeals. *Id.* at 74-81 (Ex. S). The court of appeals transferred the case to the New Mexico Supreme Court under Rule 12-102(A)(1) which requires appeals from the district court in which a sentence of life imprisonment has been imposed to be taken to the supreme court. *Id.* at 91-92 (Ex. V). On October 11, 2012 the supreme court dismissed that appeal after Mr. Ortega failed to perfect the appeal. *Id.* at 94 (Ex. X). The following day, Mr. Ortega filed a notice of appeal directly to the New Mexico Supreme Court. *Id.* at 96-102 (Ex Z). On June 9, 2014, the New Mexico Supreme Court issued an order vacating Mr. Ortega's convictions for conspiracy to commit robbery and conspiracy to commit first-degree kidnapping on double jeopardy grounds, but affirmed his other convictions. *Id.* at 235-51 (Ex. II). Thereafter, the state district court entered an amended judgment and sentence according to the New Mexico Supreme Court mandate. *Id.* at 254-56 (Ex. KK).

On March 9, 2015, Mr. Ortega filed a petition for writ of habeas corpus with the state district court. Doc. 9-2 at 1-43 (Ex. LL). The trial court summarily dismissed all claims in Mr. Ortega's habeas petition, except those asserting ineffective assistance of counsel, and directed Mr. Ortega to restate his ineffective assistance of counsel claims. *Id.* at 46-48 (Ex. NN); 49-50 (Ex. OO). Proceeding through appointed counsel, Mr. Ortega filed a restated petition for writ of habeas corpus. *Id.* at 53-63 (Ex. QQ). After holding a hearing, the trial court entered findings of fact and conclusions of law, denying the habeas petition. *Id.* at 107-119 (Ex. WW); *id.* at 120 (Ex. XX). Thereafter, Mr. Ortega filed a petition for writ of certiorari to the New Mexico Supreme Court (*id.* at 121-236 (Ex. YY)), which the court denied on March 27, 2020 (*id.* at 252 (Ex. BBB)).

On May 26, 2020, Mr. Ortega filed the present "Petition Under § 2254 for Writ of Habeas Corpus by a Person in State Custody." Doc. 1. After reviewing the petition under Habeas Corpus Rule 4, the Court ordered the State to file an answer (Doc. 5), which it did on January 27, 2021 (Doc. 9).

## EXHAUSTION

As an initial matter, under 28 U.S.C. § 2254(b), a petition for writ of habeas corpus cannot be granted "unless it appears that the applicant has exhausted the remedies available in the courts of the State." Exhaustion requires that a claim be pursued "through one complete round of the State's established appellate review process, giving the state courts a full and fair opportunity to correct alleged constitutional errors." *Selsor v. Workman*, 644 F.3d 984, 1026 (10th Cir. 2011) (citation and quotations omitted). Said another way, "a state prisoner seeking federal habeas relief generally must have first submitted each of his claims to the State's highest court." *Jernigan v. Jaramillo*, 436 F. App'x 852, 855 (10th Cir. 2011). The exhaustion

requirement is still satisfied even if the highest court exercises discretion not to review the case. *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994). Further, "[t]he exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a post-conviction attack." *Id*.

If a petitioner does not exhaust all state court remedies, the federal court can still deny his petition on the merits. 28 U.S.C. § 2254(b)(2). "Exhaustion is, therefore, based on principles of comity; exhaustion is not jurisdictional." *Harris v. Champion*, 15 F.3d 1538, 1554 (10th Cir. 1994). If a petition contains both exhausted and unexhausted claims, the court can

> (1) dismiss the mixed petition in its entirety; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit.

*Fairchild v. Workman*, 579 F.3d 1134, 1156 (10th Cir. 2009) (citations omitted). Under option four, "where the district court is convinced the unexhausted claim is without merit, or that the issue is easily resolvable against the [petitioner], the court may reach the merits of the claim rather than dismiss the petition." *Rudolph v. Galetka*, 208 F.3d 227, at *1 (10th Cir. 2000) (table decision). However, the court is not allowed to proceed with a hybrid approach, addressing the exhausted claims on the merits while dismissing the unexhausted claims without prejudice. *Moore v. Schoeman*, 288 F.3d 1231, 1235-36 (10th Cir. 2002). If the court addresses the unexhausted claims on the merits, it can only do so if it plans to deny the entire petition on the merits. *Id*.

Here, the State asserts that Mr. Ortega has exhausted his state court remedies by raising all grounds for relief in either his direct appeal or post-conviction proceeding. Doc. 9 at 7. I disagree and, as discussed below, recommend finding that Mr. Ortega has failed to exhaust his

various claims related to the jury (jury voir dire, jury moving courtrooms, and jury overhearing bench conferences). However, because those claims are easily resolvable against Mr. Ortega, I recommend the court reach the merits of all Mr. Ortega's claims.

## LEGAL STANDARD

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, a federal court may only grant a state prisoner's petition for a writ of habeas corpus where the prisoner is held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Pursuant to Section 2254(d), when the prisoner's claims have been adjudicated on the merits in state court, such a petition can only be granted if the state court's decision was contrary to, or unreasonably applied, "clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Such review must be "highly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable. If this standard is difficult to meet, that is because it was meant to be. . . . [Section] 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.

*Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (citations and internal quotation marks omitted). "The petitioner carries the burden of proof." *Cullen*, 563 U.S. at 181.

A state court decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides

6

a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision "unreasonably applies" clearly established federal law if it "correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Id.* "Where . . . the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but [also] objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003); *see also Bell*, 535 U.S. at 694 ("[A]n unreasonable application is different from an incorrect one."). "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Welch v. Workman*, 639 F.3d 980, 1010 (10th Cir. 2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101. The state court need not cite to United States Supreme Court cases, or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Indeed, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning" at all. *Harrington*, 562 U.S. at 98; *see also Cullen*, 563 U.S. at 187 ("Section 2254(d) applies even where there has been a summary denial."); *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999) ("[W]e owe deference to the state court's *result*, even if its reasoning is not expressly stated.") (emphasis in original).

When determining if a state decision was based on an unreasonable determination of facts in light of the evidence presented, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Welch*, 639 F.3d at 991 ("We presume the factual findings of the state court are correct unless the petitioner rebuts that presumption by clear and convincing evidence.").

## ANALYSIS

In his Section 2254 habeas petition, Mr. Ortega raises eight grounds for relief: (1) ineffective assistance of counsel; (2) error in denying witness use immunity to co-defendant: (3) right to confrontation violated by the surrogate testimony of Dr. Zumwalt; (4) error in jury instructions; (5) the state violated its duty to disclose; (6) failure to introduce exculpatory evidence; (7) failure to create an adequate record in support of Petitioner's request for use immunity for co-defendant; (8) cumulative error. Doc. 1. Many of these grounds also include multiple sub-claims, and some grounds repeat claims. I will, therefore, group together related claims, regardless of where those claims are found in the Petition. Further, in addressing these claims and reviewing the state court decisions under the applicable § 2254 standard, I will review the New Mexico Supreme Court's decision on direct appeal (Doc. 9-1 at 235-51 (Ex. II)) and the state court's decision on Mr. Ortega's post-conviction attack (Doc. 9-2 at 107-119 (Ex. WW)).[1]

---

[1] Mr. Ortega petitioned the New Mexico Supreme Court to review his state habeas petition (Doc. 9-2 at 121-236 (Ex. YY)), but the court denied his petition for certiorari (Doc. 9-2 at 252 (Ex. BBB)). In such a situation, United States Supreme Court directs this habeas court to "'look though' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

### 1.  Ineffective Assistance of Counsel (Grounds One, Two, Six, and Seven)

It is well established that defendants have a Sixth Amendment right to effective counsel. *See Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. Accordingly, the Supreme Court in *Strickland* devised a two-step inquiry to determine whether a lawyer's poor performance deprived an accused of his Sixth Amendment right to assistance of counsel. *Id.* at 686-87. In order to establish an ineffective assistance claim, a movant must demonstrate that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Id.* at 687-88.

Under the first prong, "the performance inquiry must be whether counsel's assistance was reasonable considering all circumstances." *Id.* at 688. However, review of an attorney's performance "must be highly deferential," and the court must "evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Indeed, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (citation omitted). The question to determine deficient performance "is whether [the] representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Simpson v. Carpenter*, 912 F.3d 542, 593 (10th Cir. 2018) (citing *Harrington*, 562 U.S. at 105).

The inquiry does not stop there; rather, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. Under the second prong of the inquiry, the movant must establish prejudice by showing "that there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. Courts may analyze either prong first and need only address one prong if the movant fails to make a sufficient showing on that prong. *Id.* at 697.

When an ineffective assistance of counsel claim comes to federal court by way of a § 2254 habeas petition, the petitioner faces an even more difficult burden to show that the state court's decision to deny his ineffective assistance of counsel claim was contrary to or an unreasonable application of clearly established federal law. *See Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 742 (10th Cir. 2016) (holding that a review of ineffective assistance of counsel claims in the context of a § 2254 petition are "doubly deferential in that [the court] take[s] a highly deferential look at counsel's performance [under *Strickland*] through the deferential lens of § 2254(d)"); *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) ("[W]hen assessing a state prisoner's ineffective-assistance-of-counsel claims on habeas review, [the court] defer[s] to the state court's determination that counsel's performance was not deficient, and further, defer[s] to the attorney's decision in how best to represent a client." (internal citation omitted)).

Mr. Ortega raises ineffective assistance of counsel claims in a number of his grounds for relief and each ground for relief based on ineffective assistance of counsel includes multiple claims of alleged failure by his counsel. Accordingly, I will address each claim in turn.

a.   Failure to Interview State's Expert

Mr. Ortega asserts that his trial counsel provided ineffective assistance because he failed to interview the State's firearms expert. Doc. 1 at 5. To provide context, at trial the State called Kevin Streine as an expert in firearms and tool mark analysis. *See* Doc. 9-1 at 135 (Ex. DD) (Mr. Ortega's statement of facts on appeal to the New Mexico Supreme Court). Mr. Streine testified

about his review of bullets and casings he received from the Office of the Medical Investigator and the Hobbs Police Department. *Id.* at 135-36. At trial, during a conference in chambers, the State pointed out that defense counsel had an opportunity to interview Mr. Streine and he failed to do so. *Id.* at 146. Defense counsel did not dispute this assertion. *Id.*

 The New Mexico Supreme Court addressed Mr. Ortega's ineffective assistance claim on direct appeal and found that Mr. Ortega's claim failed under both prongs of the *Strickland* test. Doc. 9-1 at 250-50 (Ex. II). First, the supreme court held that "[t]he record before us supports a showing that defense counsel made a strategic decision not to interview [] Streine." *Id.* at 249. It went on to explain that "[a]ny information that was likely to be gleaned from interviewing these witnesses would unlikely be helpful to [Mr. Ortega's] case, or otherwise change the outcome of his conviction. We can safely presume that defense counsel was apprised of this and made a tactical decision to forgo the interviews." *Id.* Accordingly, without more information beyond mere speculation, the supreme court "presume[d] that defense counsel's performance fell within the range of reasonable representation." *Id.* at 250. The supreme court did not stop there, however. It went on to analyze the second *Strickland* prong, holding that "[e]ven if we were to assume that defense counsel was deficient, [Mr. Ortega] cannot demonstrate prejudice." *Id.* The court found that Mr. Ortega could not make a showing that even if his counsel had interviewed Mr. Streine, the result of his trial would have been different because "[t]here is sufficient evidence in the record to support [Mr. Ortega's] conviction for murder." *Id.*

 In his present motion, Mr. Ortega fails to present any argument to establish how the New Mexico Supreme Court's decision was contrary to or an unreasonable application of federal law. To the contrary, the New Mexico Supreme Court applied both prongs of the *Strickland* test to the facts in the record to find that Mr. Ortega's trial counsel was not ineffective in failing to

interview Mr. Streine. Mr. Ortega further fails to provide any argument to establish that the supreme court's decision was based on an unreasonable determination of facts. For these reasons, I recommend denying this claim.

      b.  <u>Pretrial Investigations and Exculpatory Evidence</u>

Mr. Ortega alleges in ground one that his trial counsel failed to conduct pretrial investigations and failed to introduce exculpatory evidence. Doc. 1 at 5. He explains that his counsel had a duty to interview as many eyewitnesses, and other witnesses, as possible. *Id.* In ground six, Mr. Ortega alleges that his "[t]rial counsel failed to present the additional evidence demonstrating [that his] weapon could not have been fired the night of the homicide." *Id.* at 13. He further alleges that this failure by his counsel prejudiced him because the jury was unable to hear and consider the ballistics evidence. *Id.*

The facts of these claims for relief are related, as Mr. Ortega explained in his state habeas petition. There, he argued that his counsel failed to interview any of the State's expert witnesses including Mr. Streine or the officer who arrived at the scene first and that his "counsel failed to investigate [Mr. Ortega's] defense of physical impossibility when no spent casing or recovered projectiles matched his .45 caliber handgun." Doc. 9-2 at 59 (Ex. QQ). As for his claim regarding failure to introduce exculpatory evidence, he explained that "[a]ccording to one of the State's expert witnesses, Mr. Streine, two weapons were fired. Shell casings recovered from [the] scene were from a 32. Cal and a 9mm." *Id.* at 60. However, an eyewitness testified that Mr. Ortega fired a "big shiny gun, a 45. cal Taurus." *Id.* This, Mr. Ortega argued, shows his counsel was ineffective for failing to investigate and introduce exculpatory evidence because counsel failed "to investigate [Mr. Ortega's] defense that the projectiles and casings found at the scene of the homicide were not from [Mr. Ortega's] handgun." *Id.*

The state habeas court held a hearing and "[f]rom the presentation made at the evidentiary hearing, [it] infer[ed] that [Mr. Ortega] asserts that an adequate pretrial investigation would have revealed that all bullets used in the killing of Christopher Laureles were fired by guns held by Mark Ruiz . . . and that [Mr. Ortega's] own firearm went unused and . . . that at some point [Mr. Ortega] did not participate in the action that lead to the killing of Christopher Laureles." *Id.* at 111 ¶¶ 11-12 (Ex. WW). The state court rejected Mr. Ortega's argument, finding that Mr. Ortega's "trial counsel exercised the skill of a reasonably competent attorney," *id.* at 115 ¶ 29; 118 ¶ F, and that "there is substantial evidence to support the verdicts ultimately issued by the jury," *id.* at 119 ¶ K. Accordingly, the court further found that Mr. Ortega failed "to demonstrate a deficiency in performance of his trial counsel" and failed "to demonstrate prejudice resulting from a deficiency of his trial counsel." *Id.* at 116 ¶¶ 32-33; 118-19 ¶¶ I, J.

The state court clearly followed the *Strickland* test, and, in the present habeas petition, Mr. Ortega does not offer any argument to show that the court's holding was contrary to or unreasonably applied clearly established federal law or that the court's decision was based on an unreasonable determination of the facts. The eyewitness evidence at trial was that Mr. Ortega and his co-defendant threatened the victim, attempted to take the victim's jewelry, and *both* opened fire on the victim. Doc. 9-1 at 236 (Ex. II); Doc. 9-1 at 130 (Ex. DD). To corroborate the eyewitness testimony that *both* Mr. Ortega and his co-defendant shot the victim, the state presented expert testimony that bullet casings from two different types of guns were found at the crime scene—a 9mm and a .32 caliber. The record contains no evidence that a third gun was shot or that .45 caliber casings were found. The most reasonable inference to be drawn from this evidence is that Mr. Ortega and Mr. Ruiz used a 9mm handgun and a .32 caliber handgun to

shoot the victim, and the witness who testified that he saw Mr. Ortega fire a .45 caliber Taurus simply misidentified the caliber of the gun Mr. Ortega fired.

Mr. Ortega, however, appears to argue that because no .45 caliber casings were found, he must not have fired the gun the witness testified Mr. Ortega possessed. In other words, Mr. Ortega argues that the jury should have drawn a different conclusion from the facts presented. Such a sufficiency of the evidence argument is better addressed on direct appeal than in a habeas claim brought under section 2254. In an attempt to obtain a habeas foothold, however, Mr. Ortega asserts that his counsel failed "to investigate [Mr. Ortega's] defense that the projectiles and casings found at the scene of the homicide were not from [Mr. Ortega's] handgun." Doc. 9-2 at 60 (Ex. QQ). Further, he argues that his "[t]rial counsel failed to present the additional evidence demonstrating [that his] weapon could not have been fired the night of the homicide." Doc. 1 at 13. But he does not posit a theory about what additional investigation his counsel should have completed and he does not identify the additional evidence he claims his counsel failed to present.

Nor is any deficiency of his counsel apparent in the record. Again, Mr. Ortega's argument appears to be as follows: a witness said he fired a .45 caliber handgun; no .45 caliber casings were found at the crime scene; therefore, Mr. Ortega did not fire the gun the witness said he possessed. Had it been presented, a jury likely would have quickly rejected the argument that this means Mr. Ortega fired no gun at all in favor of a conclusion that the witness simply misidentified the caliber of the handgun Mr. Ortega did fire. Moreover, Mr. Ortega's first argument is that his counsel was ineffective for failing to further *investigate* this potential defense. But no further investigation was needed for Mr. Ortega to present his argument at trial.

Nor does Mr. Ortega specify how further investigation could have enhanced the strength of this argument.

Mr. Ortega's second argument is that his counsel failed to present the additional evidence that his weapon could not have been fired the night of the homicide. But Mr. Ortega does not identify what evidence his counsel should have, but did not, present. The jury heard that a witness identified him as possessing a .45 caliber handgun. The jury also heard that the casings recovered were something other than .45 caliber casings. Because Mr. Ortega has failed to identify what further evidence his counsel should have presented, or what further investigation his counsel should have completed, he fails to demonstrate either *Strickland* prong (ineffectiveness or prejudice).

Further, the state's theory of the case was not only that Mr. Ortega fired the shots that killed the victim, but also that he aided and abetted co-defendant Mark Ruiz in actions resulting in the victim's death. *See* Doc. 9-1 at 22 (Ex. G) (instructing jury that Defendant may be guilty of crime even if he himself did not do the acts constituting the crime if elements of aiding and abetting are met). Mr. Ruiz testified at an evidentiary hearing before the state habeas court (after he was convicted for charges stemming from this same case) that he used both the .32 and 9mm guns to kill the victim and that Mr. Ortega did not kill the victim. Doc. 9-1 at 241 (Ex. AAA). The district court found this testimony unreliable, finding it "difficult to believe that a defendant such as Mark Ruiz would have voluntarily admitted to being the primary author of all crimes in the trial of [Mr. Ortega] when Mark Ruiz was facing trial three weeks later on the same charges." Doc. 9-2 at 116 (Ex. WW). However, even if Mr. Ortega could establish that Mr. Ruiz would have taken responsibility for the murder, that Mr. Ruiz was reliable, that the bullet casing evidence would show that Mr. Ortega did not fire the shots that killed the victim, and that his

counsel acted deficiently in failing to find and present such evidence, he still would not establish prejudice. He presents no reason to believe that, even if he did not fire the shots that killed the victim, he did not aid and abet the murder. Therefore, I recommend denying this claim for relief.

    c.  <u>Use Immunity</u>

In grounds one, two, six, and seven, Mr. Ortega alleges that his trial counsel failed to create an adequate record in support of his request for use immunity for his co-defendant Mark Ruiz, including failing to make a proffer of evidence regarding Mr. Ruiz's anticipated testimony, such that the trial judge could not gauge the testimony's importance. Doc. 1 at 5, 7, 13, 14. Mr. Ortega explained in his direct appeal to the New Mexico Supreme Court that, during trial, defense counsel informed the court that he intended to call co-defendant Mark Ruiz as a witness because Mr. Ruiz was an important eyewitness, but that counsel expected Mr. Ruiz to refuse to testify on Fifth Amendment grounds. Doc. 9-1 at 140-41 (Ex. DD). Accordingly, the trial court held a bench conference in chambers with the parties, Mr. Ruiz, and Mr. Ruiz's attorney. *Id.* Mr. Ruiz informed the court that if called to testify he would assert his right against self-incrimination but that he would testify if given immunity. *Id.* at 140-41. After hearing arguments from the parties, the court denied Mr. Ortega's motion to give Mr. Ruiz use immunity. *Id.* at 141-42. Thereafter, "[t]he defense did not proffer Mr. Ruiz's possible testimony nor did it request immunity limited to an in camera hearing, which would have allowed the judge to hear Mr. Ruiz's testimony and gauge its importance." *Id.* at 142. This failure, Mr. Ortega argued, constituted ineffective assistance of counsel.[2] *Id.* at 150. The New Mexico Supreme Court found

---

[2] Mr. Ortega's argument presumes the state district court could provide Mr. Ruiz use immunity even over the opposition of the State, which was also prosecuting Mr. Ruiz. Because this issue was not briefed, the Court does not address it.

that this argument lacked support in the record and declined to consider it, explaining that the claim was better addressed in a habeas corpus proceeding. *Id.* at 250 (Ex. II).

As such, Mr. Ortega repeated, in his state habeas petition, his claim for ineffective assistance of counsel based on his counsel's failure to proffer Mr. Ruiz's testimony. Doc. 9-2 at 61 (Ex. QQ). The state habeas court held a hearing in which it called Mr. Ruiz to testify regarding what he would have said had defense counsel proffered his testimony during trial. *See id.* at 86 (Ex. TT). The habeas court determined that Mr. Ruiz was not a credible witness and found his testimony to be self-serving and exaggerated. *Id.* at 114-15 ¶¶ 25-26 (Ex. WW). The state habeas court denied Mr. Ortega's claim for ineffective assistance of counsel, finding that "[t]he defendant's trial counsel made a tactical decision not to make an offer of proof of the testimony of Mark Ruiz, who at the time of the defendant's trial faced perils associated with his own trial on identical charges to begin about three weeks later." *Id.* at 114 ¶ 23. In other words, the state habeas court found that "trial counsel's assessment of Mark Ruiz's testimony in view of the circumstances prevailing when the defendant was tried may have been that it would have been more harmful than helpful or even simply unknown." *Id.*; *see also* Doc. 9-2 at 118 ¶ F (Ex. WW) ("The defendant's trial counsel exercised the skill of a reasonably competent attorney."); *id.* ¶ I ("The defendant has failed to demonstrate a deficiency in the performance of his trial counsel."). Further, the court found no prejudice to Mr. Ortega. *Id.* at 115 ¶ 30. That is, the court found "it difficult to believe that a defendant such as Mark Ruiz would have voluntarily admitted to being the primary author of all crimes in the trial of [Mr. Ortega] when Mark Ruiz was facing trial three weeks later on the same charges." *Id.* at 116 ¶ 31; *see also id.* ¶ G ("The court cannot say that absent the failure to make an offer of proof of Mark Ruiz's testimony (which would in any case have been unreliable as trial counsel seems to have estimated), there is a reasonable

probability that the results of the trial would have been different."); *id.* at 119 ¶ J ("The defendant has failed to demonstrate prejudice resulting from a deficiency in performance of his trial counsel.").

The state habeas court clearly followed the *Strickland* test, finding that Mr. Ortega's claim for ineffective assistance of counsel failed under both prongs. In his present § 2254 habeas petition, Mr. Ortega asserts that the state court's holding was "speculative as to what might have happened if Ruiz had been presented as a witness," Doc. 1 at 13, and that "if [Mr. Ruiz's] testimony had occurred during trial, there is a reasonable probability that the outcome of the trial would have been different." *Id.* at 14. Yet these allegations fail to show that the state court's holding was contrary to or unreasonably applied clearly established federal law or that the court's decision was based on an unreasonable determination of the facts. That is, Mr. Ortega's defense counsel raised the issue of use immunity at trial, because he believed Mr. Ruiz would offer exculpatory evidence, and the trial court denied his request. Mr. Ortega presents no facts to show that the trial judge would have made a different decision had Mr. Ortega's counsel proffered Mr. Ruiz's specific testimony compared to just arguing that Mr. Ruiz's testimony was exculpatory. In other words, Mr. Ortega does not specify what information Mr. Ruiz would have testified to such that this Court could say there is a reasonable probability the outcome of his case would have been different – i.e., that the trial court would have granted Mr. Ruiz use immunity and Mr. Ruiz would have testified to exculpatory evidence – had Mr. Ortega's trial attorney proffered Mr. Ruiz's testimony to the trial judge. Accordingly, I recommend denying his petition as to this claim for relief.

### 2.   Right to Confrontation (Ground Three)

In ground three, Mr. Ortega alleges that his "confrontation rights were violated by the surrogate testimony of Dr. Zumwalt." Doc. 1 at 8. His direct appeal to the New Mexico Supreme Court provides more details regarding this claim. At trial, the State called Dr. Ross Zumwalt, Chief Medical Examiner for the State of New Mexico, to testify regarding the victim's cause of death. Doc. 9-1 at 131 (Ex. DD). Dr. Zumwalt also testified about the victim's toxicology report, a report which Dr. Hwang supervised and which Dr. Zumwalt did not participate in or observe. *Id.* at 132, 154. Dr. Zumwalt testified that

> a toxicology report had been performed on the blood and vitreous fluid in the Victim's body. He stated that Victim's blood alcohol concentration was .018, which he described as a "small amount" compared to the standard .08 for driving under the influence. He also said that marijuana metabolites were detected in Victim's blood, indicating that sometime in the past Victim had used marijuana. Finally, Dr. Zumwalt stated that amphetamine and methamphetamine were also found in Victim's body. Dr. Zumwalt testified that the toxicology testing was performed by the Scientific Laboratory Division (SLD) of the New Mexico Department of Health and that the report was signed by Dr. Rong-Jen Hwang, Bureau Chief of SLD's Toxicology Bureau.

*Id.* at 239 (Ex. II). Out of the presence of the jury, defense counsel objected to testimony about the toxicology report, citing Mr. Ortega's right to confrontation. *Id.* at 132 (Ex. DD). The trial court found no violation of Mr. Ortega's confrontation rights and denied Mr. Ortega's motion for a mistrial. *Id.* at 135.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The United States Supreme Court has applied this only to testimonial evidence against the accused. *Crawford v. Washington*, 541 U.S. 36, 51 (2004). "Testimony in turn, is typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* (quotation omitted). While the Supreme Court has not provided a laundry list of what is considered testimonial, it has held that

testimony includes statements made with the primary purpose of establishing or proving past events potentially relevant to later criminal prosecution, *Davis v. Washington*, 547 U.S. 813, 822 (2006), and statements "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009) (citation omitted). Additionally, the Confrontation Clause applies to only testimonial, as opposed to non-testimonial, statements that are offered to prove the truth of the matter asserted. *See Tennessee v. Street*, 471 U.S. 409, 414 (1985).

The Supreme Court has also "rejected the argument that all federal constitutional errors, regardless of their nature or the circumstances of the case, require reversal of a judgment of conviction." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). While some constitutional violations, require "reversal without regard to the facts or circumstances of the particular case," Confrontation Clause violations do not fit in that category. *Id.* at 681, 684. Instead, Confrontation Clause errors are subject to a harmless error analysis on direct appeal when there is an objection at trial, which requires a court to determine if the error was harmless beyond a reasonable doubt. *Id.* at 684; *see also Chapman v. California*, 386 U.S. 18, 22, 24 (1967).

> Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Van Arsdall*, 475 U.S. at 684. "When the issue comes on direct appeal, the *Chapman* harmless-error standard applies." *Acosta v. Raemisch*, 877 F.3d 918, 933 (10th Cir. 2017). However, when "the issue comes to us on habeas review" courts "must apply the . . . *Brecht* standard," which

asks "whether the constitutional violation 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* (citing *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

In considering Mr. Ortega's argument on direct appeal, the New Mexico Supreme Court found a violation of the Confrontation Clause. Doc. 9-1 at 240 (Ex. II). It concluded that the statements contained in the toxicology report were testimonial and offered for the truth of the matter asserted (that the victim's cause of death was not alcohol or drugs), that the State did not argue that Dr. Hwang was unavailable to testify at trial, and that Mr. Ortega was not afforded an opportunity to cross-examine Dr. Hwang. *Id.* However, the court affirmed Mr. Ortega's conviction on this issue because it found the error to be harmless. *Id.*

In his present § 2254 petition, Mr. Ortega has not shown that the New Mexico Supreme Court's decision was contrary to or an unreasonable application of clearly established federal law. To the contrary, the New Mexico Supreme Court clearly applied the standard from *Crawford* and its progeny of cases to evaluate whether Dr. Zumwalt's testimony on the toxicology report violated the Confrontation Clause.[3] That is, the court examined whether the statements in the toxicology report were testimonial and were offered for the truth of the matter asserted. Doc. 9-1 at 240. And in line with *Bullcoming v. New Mexico*, the court found that surrogate testimony regarding the toxicology report was a violation of the Confrontation Clause. *See* Doc. 9-1 at 240; *Bullcoming*, 564 U.S. 647, 651 (2011) ("The question presented is whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification – made for the purpose of proving a particular fact –

---

[3] The New Mexico Supreme Court did not cite *Crawford*, or any other United States Supreme Court cases in its discussion, but it is not required to, or even be aware of such cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification. We hold that surrogate testimony of that order does not meet the constitutional requirement.").

The New Mexico Supreme Court also clearly applied *Chapman* and its progeny of cases to determine whether the Confrontation Clause violation was harmless beyond a reasonable doubt. The court examined factors set forth in *Van Arsdall*, 475 U.S. at 684, such as the importance of the toxicology report in the prosecutor's case, whether the error was cumulative or introduced new facts, and the overall strength of the prosecution's case. *See* Doc. 9-1 at 240-42. As to the murder conviction, the court found that the victim's toxicity levels were not important to the State's case because the State presented evidence that the victim's cause of death was a gunshot wound, not drugs and alcohol. *Id.* at 241. That is, the court found that "[i]t is unclear why the State even sought to introduce evidence of Victim's toxicity, as relating to cause of death, particularly when the cause of death was determined to be the gunshot wound inflicted by [Mr. Ortega] and co-defendant." *Id.* As to the attempted kidnapping conviction, the court found that "evidence of Victim's toxicity would have gone to his voluntary consent to walking outside, and evidence of him being closer to sober (and thereby able to consent) would have only helped [Mr. Ortega's] case." *Id.* Additionally, the court found other evidence in the record (other witness testimony) that showed the victim did not exhibit any substantial level of impairment. *Id.* at 241-42.

Ultimately, the New Mexico Supreme Court concluded that there is "no reasonable possibility that" the admission of the toxicology report contributed to the jury's guilty verdict as to any of Mr. Ortega's convictions. *Id.* at 242. I recommend that this Court defer to that decision because, for the reasons the New Mexico Supreme Court found harmless error, neither did the

error have a substantial and injurious effect or influence in determining the jury's verdict. *See Brecht*, 507 U.S. at 623. Likewise, Mr. Ortega points to no errors that would establish that the New Mexico Supreme Court's conclusion was contrary to or an unreasonable application of clearly established federal law or that the decision was based on an unreasonable determination of the facts in light of the evidence presented.

Mr. Ortega raises one additional issue related to Dr. Zumwalt: "Dr. Zumwalt testified outside the area of his expertise. The Court improperly admitted expert testimony on scientific questions because it failed to consider whether the science behind the expert's testimony was valid." Doc. 1 at 8. I recommend rejecting this claim because Mr. Ortega fails to provide any further information, such as what testimony Mr. Ortega believes was improperly admitted. *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) ("[W]e are not required to fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments.").

Further, admissibility of expert testimony is governed by state law, *see* Rule 11-702 NMRA, and federal habeas corpus relief does not extend to errors of state law, *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "[I]t is not the province of a federal habeas court to reexamine state-court determination on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States." *Id.* at 67-68. Mr. Ortega makes no argument that the admission of Dr. Zumwalt's expert testimony violated any federal constitutional right, such as due process. *See id.* at 68-70.

**3.  Error in Jury Instructions (Ground Four)**

In his heading of ground four, Mr. Ortega alleges that "[t]he trial erred in instructing the

jury [sic]." Doc. 1 at 10. In the body of this ground, Mr. Ortega makes no further argument

regarding the jury instruction. Instead, he states

> During voir dire in Court, one juror indicated that she or her family had
> previously experienced problems with the defendant, this may have tainted the
> jury against the defendant. There were technical difficulties with the audio visual
> equipment that necessitated moving to a different court room after the first day of
> trial. After moving to the new courtroom, the jury indicated that they could hear
> the bench conferences.

*Id.* I will address these issues in turn.

a.  <u>Jury Instructions</u>

As stated above, in the heading of ground four, Mr. Ortega alleges that "[t]he trial erred

in instructing the jury [sic]." Doc. 1 at 10. There appears to be a word missing from this

allegation, and the most natural reading is that the trial *court* erred in instructing the jury, as the

court is the one that instructs the jury. If, on the other hand, Mr. Ortega is trying to argue that his

counsel provided ineffective assistance related to the jury instructions, I recommend denying any

such claim because Mr. Ortega offers no further facts to show how his counsel was ineffective or

how the state court's decision was in error. *See Fisher*, 38 F.3d at 1147 ("Although we must

liberally construe Defendant's pro se petition, we are not required to fashion Defendant's

arguments for him where his allegations are merely conclusory in nature and without supporting

factual averments." (internal citation omitted)).

Reading Mr. Ortega's claim as "the trial *court* erred in instructing the jury," I also

recommend denying this claim for a number of reasons. First, Mr. Ortega fails to state what

violation of the Constitution or law or treaties of the United States occurred. *See* 28 U.S.C. §

2254(a); *Fisher*, 38 F.3d at 1147. Second, jury instructions are matters of state law that generally

"are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (internal quotation marks and citation omitted); *see also Estelle*, 502 U.S. at 67 ("[I]t is not the province of federal habeas courts to reexamine state-court determination on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States."). Finally, to the extent Mr. Ortega is arguing his right to due process was violated, he presents no facts to show that the jury instruction infused the trial with unfairness. *See Estelle*, 502 U.S. at 75 (considering whether challenge evidence and jury instructions "so infused the trial with unfairness as to deny due process of law" (internal quotation marks and citation omitted)); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) ("The question in such a collateral proceeding is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." (internal quotation marks and citation omitted)). Indeed, he does not state which jury instructions he believes the court gave in error. For these reasons, I recommend denying relief on this claim.

    b.  <u>Other Jury Issues</u>

I turn to Mr. Ortega's other claims regarding the jury: (1) "that during voir dire, one juror indicated that she or her family had previously experienced problems with the defendant"; (2) technical difficulties with the audio-visual equipment in the courtroom forced the trial to move courtrooms after the first day of trial; and (3) after moving to the new courtroom, the jury indicated that they could hear the bench conferences.

As an initial matter, I recommend finding that Mr. Ortega has failed to exhaust all these issues. On direct appeal, Mr. Ortega listed these issues in his Statement of Issues on Appeal,

Doc. 9-1 at 107-08, 114 (Ex. BB), but he did not repeat them in his Brief-in-Chief. *See* Doc. 9-1 at 121-65 (Ex. DD). *See Maes v. Thomas*, 46 F.3d 979, 986 (10th Cir. 1995)) ("A review of New Mexico law reveals that the New Mexico courts have consistently applied the rule that deems all issues abandoned that are not raised in an appellant's brief-in-chief."); *State v. Warner*, 2015 WL 1681507, ¶ 4 (N.M. Ct. App. 2015 (unpublished)) (issues raised in docketing statement are "abandoned if they are not raised again in the briefs on appeal and supported with citations to appropriate authority"). Accordingly, the New Mexico Supreme Court did not consider them. Mr. Ortega likewise failed to raise these issues in his state habeas petition. *See* Doc. 9-2 at 1-43 (Ex. LL) (original habeas petition); *id.* at 53-63 (Ex. LL) (restated habeas petition). However, I recommend the Court presently address these issues because the unexhausted claims are easily resolvable against Mr. Ortega. *See Rudolph v. Galetka*, 208 F.3d 227, at *1 (10th Cir. 2000) (table decision).

I recommend rejecting these claims because Mr. Ortega fails to state what violation of the Constitution or law or treaties of the United States occurred and the Court need not fashion arguments for him. *See* 28 U.S.C. § 2254(a); *Fisher*, 38 F.3d at 1147. To the extent Mr. Ortega is alleging his right to due process was violated, I also recommend denying his claims because he presents no facts or arguments to show that these issues created a fundamentally unfair trial. *See Estelle*, 502 U.S. at 75. Indeed, as to his claim that a "juror indicated that she or her family had previously experienced problems" with him, the state filed a supplemental brief explaining that the person at issue was not a "juror" but a panelist questioned during voir dire.[4] Docs. 12, 13.

---

[4] After initial briefing by the parties, it was not clear to the Court if the person at issue was actually a seated juror or just a potential juror and the Court did not have a transcript from the trial. Accordingly, the Court ordered the State to file a supplemental briefing indicating whether the person was seated on the jury and attaching the state-court filings or transcript to support its

During voir dire, panelist Christine Soto indicated that she did not know Mr. Ortega personally but that "he has had problems with my sons." Doc. 12 at 2; *see also* Doc. 13 (recording of voir dire). In chambers, she explained that her son had problems and disagreements with Mr. Ortega. Doc. 12 at 2. Accordingly, the court struck her for cause and she did not sit on the jury. Doc. 12-1 at 2. In his supplemental response, Mr. Ortega argues that Ms. Soto's statement at voir dire (that her family had previous problems with Mr. Ortega) tainted the panelists who would later be seated on the jury. Doc. 24. He further argues that Ms. Soto was seen talking to two other panelists who were later seated on the jury and "surely any opinion or comment Ms. Soto made [to the two later seated] tainted the entire jury." *Id*. at 1. That Ms. Soto at some point talked to other members of the jury panel about something is not surprising. That the subject of Ms. Soto's conversation with other jury panel members related to issues her son had with Mr. Ortega is pure speculation. Mr. Ortega fails to show that Ms. Soto's statement during voir, or anything she said to other panelists, created any bias with the seated jurors such that the trial would be fundamentally unfair.

As to the technical difficulties, Mr. Ortega makes no allegations that moving courtrooms caused any issues, let alone created a fundamentally unfair trial. And lastly, as to his claim that the jury could hear bench conferences, he does not cite to anything said at a bench conference that, if the jury overheard, would create a fundamentally unfair trial.

---

position. Doc. 11. The State filed a supplemental brief on September 20, 2021, attaching an audio CD of voir dire. Docs. 12, 13.  After ensuring that Mr. Ortega received a copy of the audio CD in a form he could listen to (Docs. 14, 16, 19, 20), Mr. Ortega filed a response to the State's supplemental brief. Doc. 24.

**4.  State's Duty to Disclose (Ground Five)**

In ground five (and partially in ground three), Mr. Ortega alleges that the State violated its duty to disclose. Doc. 1 at 8, 12. This claim appears to be centered around documents relied on by the State's two experts: a toxicology report relied on by Dr. Zumwalt and a ballistics report relied on by Mr. Streine. Mr. Ortega raised this issue on direct appeal, explaining that he had twice made written demands for "original and edited notes" and "all investigative reports, statements, or notes of such investigations," but that these two documents were not disclosed until trial. Doc. 9-1 at 161-62 (Ex. DD). The New Mexico Supreme Court on direct appeal provided this background:

> During the testimony of Dr. Zumwalt, defense counsel noticed that Dr. Zumwalt was looking at the victim's file which included a toxicology report. After defense counsel raised the issue, the district court gave him an opportunity to copy the portions of the file to which Dr. Zumwalt was referring. . . . [D]efense counsel objected that the toxicology report to which Dr. Zumwalt was referring differed from the report that he previously received in discovery. . . . The State replied that defense counsel could have contacted Dr. Zumwalt and requested to interview him and review his files.
> . . .
> During Streine's testimony, defense counsel noticed that he was referring to notes. . . . In chambers, defense counsel stated that the two-page report he received in discovery did not contain the weights of the bullets, yet Streine was referring to a thirty-three-page document during his testimony that did contain the weights of the bullets. . . . The State responded that defense counsel had not attempted to contact Streine for an interview and could have done so either directly or through the district attorney's office.

*Id.* at 245-46 (Ex. II).

Under *Brady v. Maryland*, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). There are "three components or essential elements of a *Brady* prosecutorial misconduct claim: 'The evidence at issue must be favorable to the accused, either because it is exculpatory,

or because it is impeaching; that evidence must have been suppressed by the State, either

willfully or inadvertently; and prejudice must have ensued.'" *Banks v. Dretke*, 540 U.S. 668, 691

(2004) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). Prejudice is satisfied "when

the suppressed evidence is 'material' for Brady purposes." *Id.* That is, "favorable evidence is

material, and constitutional error results from its suppression by the government, 'if there is a

reasonable probability that, had the evidence been disclosed to the defense, the result of the

proceeding would have been different.'" *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting

*United States v. Bagley*, 473 U.S. 667, 682 (1985)).

On direct appeal, the New Mexico Supreme Court examined the alleged failure to

disclose under the factors listed in the state-court case *State v. Mora*, which are (1) whether the

State breached some duty or intentionally deprived the defense of evidence; (2) whether the

improperly non-disclosed evidence was material; (3) whether the non-disclosure of the evidence

prejudiced the defendant; and (4) whether the trial court cured the failure to timely disclose the

evidence. Doc. 9-1 at 246 (Ex. II) (citing *State v. Mora*, 1997-NMSC-060, ¶ 43, 124 N.M. 346).

The court found that, under prong one, the State violated its duty to disclose, and under prong

two, both the toxicology report and the ballistics report were material. *Id.* at 247. The court

wavered on prong four, finding that the trial court timely cured the State's failure to disclose, but

also that defense counsel likely did not have a sufficient amount of time to read and digest the

documents. *Id.* at 248. Ultimately, the New Mexico Supreme Court found no reversable error

based on the third prong – prejudice. *Id.* at 247-48. The court reasoned that "the toxicology

report would not have materially altered [Mr. Ortega's] defense." *Id.* at 247. Additionally, the

ballistics report containing weights of the bullets "would not have changed the outcome of [Mr.

Ortega's] murder conviction" because "[r]egardless of the bullet weights, which would

presumably establish which gun actually killed Victim, the jury had ample evidence to convict [Mr. Ortega] of first-degree murder, even if the bullets did not come from his gun." *Id.* As such, the New Mexico Supreme Court concluded that "[a]lthough there is always a risk of prejudice in not disclosing such evidence, in this case . . . [Mr. Ortega] was not prejudiced by the non-disclosure of the expert report." *Id.* at 248.

In his present § 2254 petition, Mr. Ortega makes no arguments and presents no facts to meet his high burden of establishing that the New Mexico Supreme Court's decision was contrary to or an unreasonable application of clearly established federal law, or that it was based on an unreasonable determination of facts in light of the evidence presented to the state court. True, the New Mexico Supreme Court followed the prongs established in a state-court case, and not specifically *Brady* and its progeny. However, the court was not required to cite federal cases, or even be aware of such cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8. And the New Mexico Supreme Court's reasoning and result do not contradict or unreasonably apply federal law. That is, the court considered the three components of a *Brady* violation – whether the evidence was favorable, whether the evidence was suppressed, and prejudice – and found that although the State failed to disclose material evidence, no prejudice resulted because the results of the trial (the guilty verdict) would not have been changed by earlier disclosure. Accordingly, I recommend denying Mr. Ortega's petition as to this claim for relief.

## 5.  Cumulative Error (Ground Eight)

Lastly, Mr. Ortega asserts that cumulative error denied him a fair trial. Doc. 1 at 15. In support, he restates his previous claims: ineffective assistance of counsel, improper testimony, trial court's failure to grant use immunity to co-defendant Mr. Ruiz, the State's failure to

disclose, and improper jury instruction. *Id.* Mr. Ortega raised a cumulative error claim on direct appeal and the New Mexico Supreme Court found no such error, holding that "the errors committed by the district court were harmless, and thus do not call into question the decision of the jury." Doc. 9-1 at 248 (Ex. II).

"[W]hen a habeas petitioner raises a cumulative error argument under due process principles the argument is reviewable because 'Supreme Court authority clearly establishes the right to a fair trial and due process.'" *Hanson v. Sherrod*, 797 F.3d 810, 852 n.16 (10th Cir. 2015) (quoting *Darks v. Mullin*, 327 F.3d 1001, 1017 (10th Cir. 2003)). To receive habeas relief, the court "must find that the cumulative effect of the errors determined to be harmless had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* at 852 (citing *Brecht*, 507 U.S. at 637). Because the state supreme court considered this issue on the merits, this habeas court must review any cumulative error claim "through the deferential lens of AEDPA." *Hanson*, 797 F.3d at 852.

The state supreme court found only one harmless error: Mr. Ortega's confrontation rights were violated by the surrogate testimony of Dr. Zumwalt regarding the toxicology report. Without more than one actual error, this Court cannot find cumulative error. *See Hanson*, 797 F.3d at 852. I therefore recommend finding that Mr. Ortega has failed to meet his burden to show that the New Mexico Supreme Court's decision was contrary to or an unreasonable application of clearly established federal law.

### EVIDENTIARY HEARING

A petitioner is "entitled to an evidentiary hearing so long as his allegations, if true and if not contravened by the existing factual record, would entitle him to habeas relief." *Anderson v. Attorney General of Kan.*, 425 F.3d 853, 858 (10th Cir. 2005) (citation and internal quotation

marks omitted). However, factual allegations must be "specific and particularized, not general or

conclusory." *Id.* at 858-59. "Moreover, an evidentiary hearing is unnecessary if the claim can be

resolved on the record." *Id.* at 859. Here, Mr. Ortega presents no specific and particularized

factual allegations that would entitle him to habeas relief. Accordingly, I believe that this matter

can be resolved on the record and I recommend finding that Mr. Ortega is not entitled to an

evidentiary hearing.

**RECOMMENDATION**

For the above-stated reasons, I recommend denying Mr. Ortega's "Petition Under 28

U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody" (Doc. 1) on the merits as

to all grounds for relief and that the petition be dismissed with prejudice.

I further recommend that Mr. Ortega is not entitled to a certificate of appealability. *See*

*Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (finding that to be entitled to a certificate of

appealability, a petitioner must demonstrate that "reasonable jurists could debate whether (or, for

that matter, agree that) the petition should have been resolved in a different manner or that the

issues presented were adequate to deserve encouragement to proceed further").

_____
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**